UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANGEL HANBERRY                                      CIVIL ACTION

VERSUS                                              NO. 19-10235

FIRST PREMIER BANK                                  SECTION: "G"(4)

## ORDER

In this litigation, pro se Plaintiff Angel Hanberry ("Plaintiff") alleges that Defendant First Premier Bank ("FPB") violated the Fair Credit Reporting Act ("FCRA") because FPB incorrectly reported to multiple credit reporting agencies that Plaintiff had two "unproven incomplete and derogatory accounts" with FPB.[1] Pending before the Court is FPB's "Motion to Dismiss for Improper Venue and to Compel Arbitration or Alternatively Stay Proceedings."[2] In the instant motion, FPB urges this Court to dismiss Plaintiff's FCRA claims or, alternatively, stay the proceedings because Plaintiff's claims are subject to binding arbitration agreements signed by Plaintiff and FPB.[3] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion in part to the extent FPB requests that the Court compel Plaintiff to arbitrate the claims and stay the matter pending arbitration. The Court denies the motion in part to the extent FPB requests dismissal of the case in favor of arbitration.

---

[1] Rec. Doc. 1 at 1.

[2] Rec. Doc. 12.

[3] *Id.*

1

## I. Background

On May 8, 2019, Plaintiff filed a complaint against FPB in this Court.[4] In the Complaint, Plaintiff alleges that FPB reported to multiple credit agencies that Plaintiff had two "unproven incomplete and derogatory accounts" with FPB.[5] In particular, Plaintiff alleges that FPB reported to credit reporting agencies that Plaintiff owed $1,273.00 under account number 5178-xxxx-xxxx-1276 ("Account 1276") and $845.00 under account number 5178-xxxx-xxxx-7058 ("Account 7058").[6] According to the Complaint, multiple credit reporting agencies confirmed that FPB reported the "derogatory" information regarding Account 1276 and Account 7058.[7] Plaintiff contends that because FPB incorrectly reported her account information to credit reporting agencies, FPB violated the Fair Credit Reporting Act.[8]

On July 15, 2019, FPB filed the instant motion requesting an Order compelling Plaintiff to arbitrate the claims.[9] According to FPB, Account 1276 and Account 7058 are both subject to binding credit card contracts, which allegedly both contain binding arbitration provisions ("Arbitration Provisions").[10] FPB argues that the Court should dismiss the case without prejudice or, alternatively, stay the case pending arbitration.[11] On July 24, 2019, Plaintiff filed an opposition

---

[4] Rec. Doc. 1 at 1.

[5] *Id.*

[6] *Id.*; Rec. Doc. 1-1.

[7] Rec. Doc. 1 at 1.

[8] *Id.*

[9] Rec. Doc. 12.

[10] Rec. Doc. 12-1 at 3–5.

[11] *Id.* at 1.

to the instant motion.[12]

## II. Parties' Arguments

*A.    FPB's Arguments in Support of the Instant Motion*

FPB makes three principal arguments in support of the instant motion. First, FPB argues that the Federal Arbitration Act ("FAA") governs enforcement of the Arbitration Provisions in the parties' credit card contracts.[13] According to FPB, the FAA governs any contract within the reach of Congress's Commerce Clause powers.[14] FPB contends that the credit card contracts entailed an interstate-commerce transaction because Plaintiff, a Louisiana resident, obtained financial accounts from FPB, a South Dakota corporation with its principal place of business in South Dakota.[15]

Second, FPB argues that Plaintiff's FCRA claims are subject to the Arbitration Provisions. According to FPB, this Court must conduct a two-step inquiry to determine whether Plaintiff's FCRA claims are subject to the Arbitration Provisions.[16] FPB asserts that the first step is to determine whether the parties agreed to arbitrate the dispute, which itself consists of two separate inquiries: (a) whether a valid agreement to arbitrate exists between the parties and (b) whether the dispute in question falls within the scope of that valid agreement to arbitrate.[17] Next, FPB asserts that the second step is to determine whether "any federal statute or policy renders

---

[12] Rec. Doc. 15.

[13] Rec. Doc. 12-1 at 9.

[14] *Id.*

[15] *Id.* at 10.

[16] *Id.* at 7.

[17] *Id.*

3

[Plaintiff's] claims non-arbitrable."[18]

Under step 1(a), FPB argues that a valid agreement exists because FPB and Plaintiff are both parties to the credit card contracts.[19] FPB further argues that Plaintiff "consented to the terms of the Contracts, including the Arbitration Provisions, through her conduct of accepting the FPB credit cards and making purchases using the Accounts."[20]

Next, under step 1(b), FPB contends that the arbitrator—not the Court—should determine whether Plaintiff's FCRA claims fall within the scope of the Arbitration Provisions because both parties intended to let the arbitrator decide that issue.[21] Yet, if the Court decides the scope issue, FPB argues that the Court should find that Plaintiff's FCRA claims fall within the scope of the Arbitration Provisions.[22] As support, FPB points to the "broad" Arbitration Provisions, which state that "any claim, dispute or controversy" "arising out of or relating to" Account 1276 or Account 7058 "shall be resolved and settled exclusively and finally by binding arbitration."[23]

Furthermore, under step 2, FPB argues that Plaintiff cannot point "to any federal statutes or policies that prohibit arbitration of the claims asserted in her Complaint."[24] FPB contends that "[a]lthough the Fifth Circuit has not addressed the issue directly, several district courts have held that FCRA claims are arbitrable and that nothing in the FCRA's statutory framework or legislative

---

[18] *Id.*

[19] *Id.* at 11.

[20] *Id.*

[21] *Id.* at 12–13.

[22] *Id.* at 13.

[23] *Id.*

[24] *Id.* at 16.

4

history precludes the application of the FAA to claims under the FCRA."[25] FPB concludes that "there is no congressional prohibition against arbitrating FCRA claims."[26]

Third, FPB argues that because all of Plaintiff's claims against FPB "must be referred to arbitration, the Court should dismiss, without prejudice, this action against FPB pending arbitration of [Plaintiff's] claims."[27] In the alternative, FPB contends that "this action against FPB must be stayed pending arbitration between the parties."[28]

### B. *Plaintiff's Arguments in Opposition to the Instant Motion*

In opposition, Plaintiff argues that the "Complaint filed in this Honorable Court by Plaintiff has nothing to do with a credit card contract."[29] Instead, Plaintiff contends that the Complaint "is requesting the Court to bring justice to a consumer when creditors report the incorrect information and do not correct when properly and legally asked" to do so.[30] Plaintiff thus concludes that she does not have to "adhere to [the] credit card arbitration clause" because her claims have "nothing to do with a credit card contract."[31]

### III. Legal Standard

In *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, the United States Court of Appeals for the Fifth Circuit explained that the FAA was "in large part motivated by the goal of

---

[25] *Id.* (quoting *Greene v. Chase Manhattan Auto. Fin. Corp.*, No. 03-2179, 2003 WL 22872102, at *4 (E.D. La. Dec. 3, 2003).

[26] *Id.*

[27] *Id.* at 17.

[28] *Id.*

[29] Rec. Doc. 15 at 4.

[30] *Id.*

[31] *Id.*

5

eliminating the courts' historic hostility to arbitration agreements."[32] The Fifth Circuit further explained that "Section 2 of the FAA puts arbitration agreements on the same footing as other contracts."[33] This means that, "as a matter of federal law, arbitration agreements and clauses are to be enforced unless they are invalid under principles of state law that govern all contracts."[34]

There is a "strong federal policy in favor of enforcing arbitration agreements."[35] Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration . . . the court . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. . . .[36]

"[I]f the issues in a case are within the reach of that [arbitration] agreement, the district court has no discretion under section 3 to deny the stay."[37]

## IV. Analysis

### A. *Whether the Federal Arbitration Act Applies to this Dispute*

In resolving the instant motion before the Court, it is first necessary to determine whether the FAA governs the dispute between Plaintiff and FPB. The FAA, codified at 9 U.S.C. § 1, *et seq.*, provides the basis for the Court's inquiry. Section 2 of the FAA states that a "contract evidencing a transaction involving *commerce* to settle by arbitration a controversy thereafter

---

[32] 379 F.3d 159, 166 (5th Cir. 2004).

[33] *Id.*

[34] *Id.*

[35] *Texaco Expl. & Prod. Co. v. AmClyde Engineered Prod. Co.*, 243 F.3d 906, 909 (5th Cir. 2001) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985)).

[36] 9 U.S.C. § 3.

[37] *Texaco Expl. & Prod. Co.*, 243 F.3d at 909 (quoting *Hornbeck Offshore Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 754 (5th Cir. 1993)).

arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable."[38] "Commerce" under Section 1 of the FAA means "commerce among the several States or with foreign nations."[39] The U.S. Supreme Court has held that the FAA "provide[s] for the enforcement of arbitration agreements within the full reach of the Commerce Clause" in the United States Constitution.[40]

Here, Plaintiff does not argue that the FPB credit card contracts do not entail interstate commercial activity.[41] In any event, this case involves a dispute between Plaintiff, a Louisiana resident, and FPB, a South Dakota corporation with its principal place of business in South Dakota.[42] Plaintiff received a consumer credit card from FPB for Account 1276 after she completed a credit card application on FPB's website, and she received a credit card for Account 7058 after she completed a credit card application via telephone.[43] In sum, Plaintiff and FPB are citizens of different states who negotiated and agreed to credit card contracts over the telephone and internet. "[A] contract may involve commerce under the FAA if the parties engaged in the performance of contract activities are citizens of different states, where such a contract involves interstate travel of both personnel and payments."[44]

Accordingly, the Court finds that the credit card contracts entailed interstate commercial

---

[38] 9 U.S.C. § 2 (emphasis added).

[39] *Id.* § 1.

[40] *Perry v. Thomas*, 482 U.S. 483, 490 (1987).

[41] Rec. Doc. 1; Rec. Doc. 15

[42] Rec. Doc. 12-3; Rec. Doc. 12-4; Rec. Doc. 12-5; Rec. Doc. 12-6.

[43] Rec. Doc. 12-2 at 3, 9.

[44] *See Atl. Aviation, Inc. v. EBM Grp., Inc.*, 11 F.3d 1276, 1280 (5th Cir. 1994), *overruled on other grounds by Action Industries, Inc. v. U.S. Fidelity & Guar. Co.* 358 F.3d 337, 341 n.10 (5th Cir. 2004) (internal citations omitted).

activity, and the FAA applies to the present dispute between Plaintiff and FPB. The Court will now consider whether the Arbitration Provisions in the parties' credit card contracts are enforceable against Plaintiff.

## B. *Enforceability of the Arbitration Provisions*

To determine if an arbitration clause is enforceable, the Fifth Circuit has established a two-step inquiry.[45] First, a court determines whether the parties agreed to arbitrate.[46] This first step itself is subdivided into two considerations: (a) whether there was a valid agreement to arbitrate and (b) whether the dispute in question falls within the scope of the arbitration clause.[47] If both questions are answered in the affirmative, the court moves on to the second step. Under the second step, a court determines whether "any federal statute or policy renders the claims nonarbitrable."[48]

### 1. Whether there was a Valid Agreement to Arbitrate

Under step 1(a) of the Fifth Circuit's two-step test, the Court must determine whether a valid agreement to arbitrate exists between the parties. In making this determination, courts apply "ordinary state-law principles that govern the formation of contracts."[49] Here, the credit card contracts contain choice-of-law provisions stating that South Dakota law shall govern the contracts.[50] Therefore, the Court will analyze the issue of whether a valid agreement to arbitrate

---

[45] *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002).

[46] *Id.*

[47] *Id.*

[48] *Jones v. Halliburton Co.*, 583 F.3d 228, 234 (5th Cir. 2009).

[49] *Fleetwood Enterprises,* 280 F.3d at 1073 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

[50] Rec. Doc. 12-3; Rec. Doc. 12-6.

exists under South Dakota law.[51] The essential elements of contract formation under South Dakota law include "(1) Parties capable of contracting; (2) Their consent; (3) A lawful object; and (4) Sufficient cause or consideration."[52]

In this case, Plaintiff does not argue that the credit card contracts—which include the Arbitration Provisions—are invalid under South Dakota's contract law.[53] Nevertheless, the Court will address the issue. The credit card contracts conditioned Plaintiff's acceptance of its terms upon Plaintiff conducting her first purchase with the credit cards.[54] On December 22, 2011, Plaintiff conducted her first purchase with the credit card for Account 1276.[55] On January 31, 2016, Plaintiff conducted her first purchase with the credit card for Account 7058.[56] Thus, Plaintiff purportedly accepted the terms of both credit card contracts—including the Arbitration Provisions—by making those first purchases. Plaintiff does not dispute that she made those first purchases or that she consented to the credit card contracts' terms for Account 1276 and Account

---

[51] Plaintiff does not dispute whether South Dakota's contract law should guide the Court's contract formation analysis. Yet even if Plaintiff did contend that Louisiana contract law governs the "valid agreement" dispute, this Court would still find that Plaintiff clearly consented to the arbitration provisions in the credit card contracts between Plaintiff and FPB. Under Louisiana law, a contract is "an agreement by two or more people whereby obligations are created, modified, or extinguished." La. Rev. Stat. § 5:1906. An "obligation cannot exist without a lawful cause." *Id.* § 5:1966. "Cause is the reason why a party obligates himself." *Id.* § 5:1967. Louisiana law also provides that "[i]t is well-settled that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him." *Coleman v. Jim Walter Homes, Inc.* 2008–1221 (La.3/17/09); 6 So. 3d 179, 183. Here, it is undisputed that Plaintiff consented to the credit card contracts, and Plaintiff does not argue that those contracts are not supported by a lawful cause.

[52] S.D. Codified Laws § 53-1-2.

[53] Plaintiff also does not argue a lack of contract formation existed under Louisiana law.

[54] Rec. Doc. 12-3; Rec. Doc. 12-6.

[55] Rec. Doc. 12-2 at 4.

[56] *Id.* at 10.

9

7058.⁵⁷

Therefore, Plaintiff consented to the credit card contracts' terms, and Plaintiff does not argue that any other issues affected the formation of the contract in this case. Accordingly, the Court finds that a valid agreement to arbitrate exists between Plaintiff and FPB.

**2. Whether Plaintiff's FCRA Claims fall within the Arbitration Provisions**

Under step 1(b) of the Fifth Circuit's two-step test, the question is whether Plaintiff's FCRA claims fall within the scope of the credit card contracts' Arbitration Provisions. FPB concedes that courts ordinarily determine whether a Plaintiff's claims fall within the scope of an arbitration clause.⁵⁸ Yet, in this case, FPB contends that the arbitrator—not the Court—should decide whether Plaintiff's FCRA claims fall within the scope of the Arbitration Provisions.⁵⁹ According to FPB, both parties intended to allow the arbitrator to decide whether claims fall within the Arbitration Provisions.⁶⁰ As support, FPB points to the credit card contracts' "broad" Arbitration Provisions.⁶¹ Those Provisions state that "any claim, dispute or controversy" "arising out of or relating to" Plaintiff's credit card accounts with FPB "shall be resolved and settled exclusively and finally by binding arbitration."⁶²

At the outset, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute [that] he has not agreed so to submit."⁶³ Hence, the parties to an

---

⁵⁷ Rec. Doc. 1; Rec. Doc. 15.

⁵⁸ Rec. Doc. 12-1 at 12.

⁵⁹ *Id.*

⁶⁰ *Id.* at 12–13.

⁶¹ *Id.*

⁶² Rec. Doc. 12-3; Rec. Doc. 12-4; Rec. Doc. 12-5; Rec. Doc. 12-6.

⁶³ *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 33–34 (2014) (quoting *Steelworkers v. Warrior &*

10

arbitration agreement decide whether a "particular matter is primarily for arbitrators or for courts to decide."[64] Yet if the parties' contract is "silent on the matter of who primarily is to decide 'threshold' questions about arbitration, courts determine the parties' intent with the help of presumptions."[65]

Under Supreme Court precedent, "courts presume that parties intend courts, not arbitrators, to decide . . . disputes about arbitrability."[66] A dispute about arbitrability includes the question of whether "an arbitration clause in a concededly binding contract applies to a particular type of controversy."[67] Both the Supreme Court and the Fifth Circuit have explicitly held that disputes over the arbitrability of a claim is an issue for the court to decide "[u]nless the parties clearly and unmistakably provide otherwise."[68] The pro-court presumption for disputes about arbitrability avoids "the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate."[69] Here, neither party has pointed to any language in the credit card contracts indicating that they "clearly and unmistakably" intended for an arbitrator to decide questions of arbitrability rather than the Court.[70] Accordingly, this Court must resolve the dispute over whether

---

*Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)).

[64] *Id.* at 33.

[65] *Id.*

[66] *Id.* (internal quotations and citations omitted).

[67] *Id.* (internal quotations and citations omitted).

[68] *AT&T Techs., Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 649 (1986).

[69] *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002)

[70] This Court notes that there appears to be some conflicting guidance within the Fifth Circuit as to whether the Court or the arbitrator should decide whether claims fall within the scope of an arbitration provision. *See LLOG Expl. Offshore, LLC v. Newfield Expl. Co.*, No. 15-1746, 2016 WL 98618, at *3–5 (E.D. La. Jan. 8, 2016) (Engelhardt, J.) (discussing the differing case law on the question of whether the courts or arbitrators should decide issues of arbitrability).

On the one hand, the Fifth Circuit has clearly stated that whether a dispute falls within the scope of an

Plaintiff's FCRA claims fall within the scope of the Arbitration Agreements.

Courts apply a strong presumption in favor of arbitrability when deciding whether a party's claims fall within the scope of an arbitration provision.[71] Any doubt about the arbitrability of a dispute should be resolved in favor of arbitration.[72] The party resisting arbitration bears the burden of proving that a dispute is not arbitrable.[73] To overcome the presumption in favor of arbitrability, clear evidence must exist that the parties did not intend the claim at issue to be arbitrated.[74]

---

arbitration clause is for the court to decide. *See Pennzoil Expl. & Prod. Co.*, 139 F.3d at 1066 ("Whether the dispute falls within the arbitration agreement is a determination this court must make...."); *see also BG Grp., PLC*, 572 U.S. at 34 (holding that it is presumed that parties intend for the courts, not arbitrators, to decide disputes about "arbitrability," such as "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy"); *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 n.2 (2013); *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1321 (5th Cir. 1994) (noting that the questions of whether a party can be compelled to arbitrate and what issues a party can be compelled to arbitrate are issues for the court to decide).

On the other hand, the Fifth Circuit has also held that the question of who determines issues of arbitrability is decided by examining the breadth of the arbitration provision, rather than what the parties are disputing. *See, e.g.*, *In re Complaint of Hornbeck Offshore* (1984) *Corp.*, 981 F.2d 752, 754 (5th Cir. 1993) (concluding that, if an arbitration clause is "broad," then the arbitrator should determine whether a dispute falls within the clause, while clauses that are narrow should not be referred to arbitration unless the court determines that the dispute falls within the clause). The Fifth Circuit determined in *In re Hornbeck* that, because the arbitration clause was broad, "the district court should have granted the stay under § 3 and permitted the arbitrators to decide, among other things, whether the contribution/indemnification dispute falls within it." *Id.* at 755.

Yet, this Court notes that, in *Pennzoil Expl. & Prod. Co.*, the Fifth Circuit acknowledged that there may be a conflict between their decisions as to who decides issues of arbitrability, but ultimately concluded that questions regarding what issues a party can be compelled to arbitrate should be decided by the *court* rather than the arbitrator. 139 F.3d at 1066 & n.7. Recently, the Fifth Circuit once again confirmed that courts are to decide what issues a party can be compelled to arbitrate—without conducting a "broad" versus "narrow" analysis. *See Archer & White Sales, Inc. v. Henry Schein, Inc.*, No. 16-41674, 2019 WL 3812352 (Aug. 14, 2019). FPB's brief discusses the Fifth Circuit's "broad" versus "narrow" doctrine but, based on both Supreme Court and recent Fifth Circuit precedent, it is appropriate for this Court to determine whether Plaintiff's FCRA claims fall within the Arbitration Provisions.

[71] *AT&T Techs.,* 475 U.S. at 648.

[72] *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

[73] *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 539 (5th Cir. 2003).

[74] *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24.

The Fifth Circuit, in *Pennzoil Exploration & Production*, dealt with expansive language in an arbitration provision when deciding whether a party's claims fall within the scope of that arbitration provision. There, the Fifth Circuit held that an arbitration provision covering any dispute "arising out of" or "in connection with or relating to" a contract is "not limited to claims that literally arise under the contract."[75] Instead, the parties' claim need only "touch matters covered by the [contract] to be arbitrable."[76]

In this case, the Arbitration Provisions state that "any claim, dispute or controversy" "arising out of or relating to" Plaintiff's credit card contracts with FPB "shall be resolved settled exclusively and finally by binding arbitration."[77] That language is quite similar to the "related to" language in *Pennzoil* and, therefore, the Arbitration Provisions in this case are "not limited to claims that literally arise under the contract."[78] Instead, Plaintiff's FCRA claims need only "touch matters" covered by the credit card contracts between Plaintiff and FPB. Plaintiff's FCRA claims do just that.

The Arbitration Provisions in the parties' credit card contracts state that "any claim, dispute or controversy" "arising out of or relating to" Plaintiff's credit card contracts with FPB— for Account 1276 and Account 7058— must be arbitrated. In the Complaint, Plaintiff alleges that FPB reported to multiple credit reporting agencies that Account 1276 and Account 7058 were "unproven incomplete and derogatory accounts."[79] Plaintiff's argument that the FCRA claims

---

[75] *Pennzoil Exploration & Prod. Co.*, 139 F.3d at 1067 (internal quotations omitted).

[76] *Id.* at 1068 (internal quotations omitted).

[77] Rec. Doc. 12-3; Rec. Doc. 12-4; Rec. Doc. 12-5; Rec. Doc. 12-6.

[78] *Pennzoil Exploration & Prod. Co.*, 139 F.3d at 1067 (internal quotations omitted).

[79] Rec. Doc. 1 at 1.

have "nothing to do with a credit card contract" is not persuasive.[80] Plaintiff alleges that she brings the current FCRA claims because FPB reported Account 1276 and Account 7058 to credit bureaus—the same accounts that Plaintiff alleges have "nothing to do" with her FCRA claims.[81] Thus, Plaintiff's FCRA claims "relate to" or "arise out of" the credit card contracts she signed for Account 1276 and Account 7058.

This case is not a close call but, even if it were, any doubts concerning the scope of an arbitration clause is resolved in favor of arbitrability.[82] Plaintiff cannot overcome that strong presumption in favor of arbitrability. Therefore, the Court finds that Plaintiff's claims fall within the scope of the Arbitration Provisions.

### 3. Whether any Federal Policy or Federal Statute Forecloses Arbitration of Plaintiff's FCRA Claims

Under Step 2 of the Fifth Circuit's two-part test, the Court determines whether any federal statute or policy renders a party's claims non-arbitrable.[83] Here, Plaintiff does not point to any federal statute or policy that would render Plaintiff's FCRA claim non-arbitrable.[84] "Although the Fifth Circuit has not addressed the issue directly, several district courts have held that FCRA claims are arbitrable and that nothing in the FCRA's statutory framework or legislative history precludes the application of the FAA to claims under the FCRA."[85] Accordingly, no federal policy

---

[80] Rec. Doc. 15 at 4.

[81] Rec. Doc. 1 at 1.

[82] *Harvey v. Joyce*, 199 F.3d 790, 793 (5th Cir. 2000).

[83] *Jones v. Halliburton Co.*, 583 F.3d 228, 234 (5th Cir. 2009).

[84] Rec. Doc. 1; Rec. Doc. 15.

[85] *See, e.g.*, *Greene v. Chase Manhattan Auto. Fin. Corp.*, No. 03-2179, 2003 WL 22872102, at *4 (E.D. La. Dec. 3, 2003) (citing *Berkery v. Cross Cty. Bank*, 256 F.Supp.2d 359 (E.D. Pa. 2003); *Jacobsen v. J.K. Pontiac GMC Truck, Inc.*, No. 01 C 4316, 2001 WL 1568817 (N.D. Ill. Dec. 10, 2001)).

14

or statute forecloses arbitration of Plaintiff's FCRA claims and therefore the FAA requires the Court to enforce the Arbitration Provisions.

C. *Whether the Court Should Dismiss the Case or Stay the Proceedings*

According to FPB, all of Plaintiff's claims should be referred to arbitration and the case should be dismissed, without prejudice, pending arbitration.[86] In the alternative, FPB contends that Plaintiff's FCRA claims "must be stayed pending arbitration between the parties."[87]

Under Section 3 of the FAA, if a federal court determines that the parties' transaction entails interstate commerce and the FAA governs the litigation, a federal court has the authority to stay the litigation pending arbitration.[88] As the Fifth Circuit observed, Section 3 of the FAA is mandatory because it provides that federal courts "*shall* on application of one of the parties stay the trial of the action."[89]

FPB points to the Fifth Circuit's opinion in *Alford v. Dean Witter Reyonds, Inc.* as support for dismissing Plaintiff's FCRA claims. There, the Fifth Circuit stated that "[t]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."[90] Yet, in later cases, the Fifth Circuit clarified the language in the *Alford* opinion. Indeed, in *Apache Bohai Corp. LDC, Texaco China, B.V*, the Fifth Circuit stated that "*Alford* held merely that dismissal was not an abuse of discretion" and, moreover, *Alford* "did not hold that dismissal was required" when all of a party's claims are subject to

---

[86] *Id.* at 17.

[87] *Id.*

[88] 9 U.S.C. § 3.

[89] *Waste Mgmt, Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 342–43, 346 (5th Cir. 2004).

[90] *Alford v. Dean Witter Reyonds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).

arbitration.[91] Instead, the district courts also have discretion to stay the case.[92]

Here, although the Court has the authority to dismiss the case, the Court need not necessarily do so. Instead, the Court may stay the proceedings pending arbitration. Accordingly, the Court will stay the proceedings pending arbitration for two reasons: first, because Section 3 of the FAA clearly states that federal courts "*shall* on application of one of the parties stay the trial of the action"[93] and, second, because the Fifth Circuit has not provided clear guidance on the proper method to deal with proceedings subject to arbitration.

## V. Conclusion

The Court grants the motion in part to the extent FPB requests that the Court compel Plaintiff to arbitrate the claims raised in the Complaint and stay the matter pending arbitration. The Court denies the motion in part to the extent FPB requests dismissal of the case in favor of arbitration.

Accordingly,

---

[91] *Apache Bohai Corp., LDC v. Texaco China, B.V.*, 330 F.3d 307, 311 n.9 (5th Cir. 2003).

[92] *Id.*; *see also Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 676 (5th Cir. 1999) (stating that "district courts have discretion to dismiss cases in favor of arbitration," but not implying any obligation to do so).

[93] 9 U.S.C. § 3.

**IT IS HEREBY ORDERED** that FPB's "Motion to Dismiss for Improper Venue and to Compel Arbitration or Alternatively Stay Proceedings"[94] is **GRANTED IN PART** to the extent it requests a stay pending arbitration **AND DENIED IN PART** to the extent that it requests that the matter be dismissed in favor of arbitration.

**NEW ORLEANS, LOUISIANA**, this __16th__ day of September, 2019.

_____
**NANNETTE JOLIVETTE BROWN
CHIEF JUDGE
UNITED STATES DISTRICT COURT**

---

[94] Rec. Doc. 12.